UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

ROGUE VALLEY MEDICAL CENTER,

    Plaintiff,

v.

KATHLEEN SEBELIUS,
  Secretary, United States Department of
  Health and Human Services,

    Defendant.[1]

Civil Action No. 03-0477 (PLF)

---

OPINION

Plaintiff hospital brings suit for declaratory and injunctive relief in the nature of mandamus, asking the Court to compel defendant, the Secretary of Health and Human Services, through the Centers for Medicare and Medicaid Services ("CMS") to reopen a final payment decision issued by the Secretary's payment agent and to recalculate the Secretary's reimbursement of plaintiff for services it rendered.[2] In addition, plaintiff purports to represent a putative class of hospitals and seeks class relief as well as relief on its individual claims. This matter currently is before the Court on defendant's motion to dismiss. After careful

---

[1] The Court has substituted Kathleen Sebelius, the current Secretary of the Department of Health and Human Services, as the defendant in place of former Secretary Michael Leavitt, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] CMS is the component of the Department of Health and Human Services that is responsible for administering the Medicare program. It was formerly known as the Health Care Financing Administration ("HCFA").

consideration of the parties' papers and the entire record in the case, the Court will grant defendant's motion to dismiss.[3]

## I. BACKGROUND

*A. Statutory Framework for Medicare Reimbursement*

The Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., creates a federally funded health insurance program for the elderly and disabled. Part A of the Medicare Act reimburses hospitals for the operating costs of certain inpatient services. See 42 U.S.C. § 1395ww. In order to obtain this reimbursement, eligible hospitals file cost reports with their "fiscal intermediaries," see 42 C.F.R. § 413.20, usually insurance companies serving as the Secretary's agents for the purpose of reimbursing health care providers. See 42 C.F.R. § 421.3; In re Medicare Reimbursement Litig., 414 F.3d 7, 8 (D.C. Cir. 2005), cert. denied, 547 U.S. 1054 (2006). The intermediaries audit the hospitals' cost reports and then issue Notice of Program Reimbursements ("NPRs") in which they determine the amount owed by the Secretary to the hospitals for the fiscal year at issue. See 42 C.F.R. § 405.1803(a). Hospitals may appeal the NPR to the Provider Reimbursement Review Board (the "PRRB") within 180 days. See 42 U.S.C. § 1395oo(a). The PRRB may reverse, affirm, or modify the intermediary's decision;

---

[3] The Court had before it the following papers in connection with this motion: the First Amended Complaint ("Am. Compl."); Defendant's Motion to Dismiss ("Mot."); Plaintiff's Opposition to Defendant's Motion to Dismiss ("Opp."); the Reply in Further Support of Defendant's Motion to Dismiss ("Rep."); Plaintiff's Motion for Leave to File a Second Amended Complaint ("Mot. to Amend"); Defendant's Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint; Plaintiff's Reply to Defendant's Opposition to Motion for Leave to File a Second Amended Complaint; Plaintiff's Motion to Strike Portions of Defendant's Motion to Dismiss ("Mot. to Strike"); Defendant's Opposition to Plaintiff's Motion to Strike; and Plaintiff's Reply to Defendant's Opposition to the Motion to Strike.

subsequently, the Secretary similarly may reverse, affirm or modify the PRRB's decision. See 42 U.S.C. §§ 1395oo(d), (f)(1). Hospitals still dissatisfied with the final decision may seek judicial review by filing suit in the appropriate United States District Court. See 42 U.S.C .§ 1395oo(f); In re Medicare Reimbursement Litig., 414 F.3d at 8.

An intermediary's determination of the NPR that is not appealed to the PRRB typically is "final and binding" unless it is reopened by the intermediary. See 42 C.F.R. § 405.1807. The intermediary "may" reopen an NPR determination "with respect to findings on matters at issue in such determination" if either the intermediary or the hospital files a motion within three years. See 42 C.F.R. § 405.1885(a).[4] The intermediary is required to reopen and revise an NPR if, within three years, the HCFA provided notice to the intermediary that the decision was "inconsistent with the applicable law." 42 C.F.R. § 405.1885(b).

*B. Reimbursement Based on an "Expansion Population"*

Reimbursement to hospitals varies based on hospital-specific factors, see 42 U.S.C. § 1395ww(d)(5); those hospitals that serve a "significantly disproportionate number of low-income patients" receive increased reimbursements known as "disproportionate share" ("DSH") adjustments. 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). Congress enacted legislation that established detailed criteria for determining hospital eligibility and the extent of any DSH adjustment. See 42 U.S.C. § 1395ww(d)(5)(F); In re Medicare Reimbursement Litig., 414 F.3d

---

[4] The parties both rely on the version of the reopening regulation, 42 C.F.R. § 405.1885, that was in effect as of January 20, 2000, even though the regulation has since been amended for clarification. The Court will do the same. See In re Medicare Reimbursement Litig., 309 F. Supp. 2d 89, 97 n. 6 (D.D.C. 2004) (declining to apply current version of regulation).

at 9. Whether a hospital qualifies for a DSH adjustment for a particular cost period and the size of any adjustment depends in part on the number of days spent in hospitals by patients who "were eligible for medical assistance [Medicaid]" but who were not entitled to Medicare. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). Generally, the more Medicaid inpatient days that a hospital has, the larger its DSH adjustment will be.

Oregon, where the plaintiff hospital is located, has a non-standard Medicaid plan known as a Section 1115 waiver program or "demonstration project." See Am. Compl. ¶¶ 16-18, 23. A demonstration project is a plan for which some of the regulations imposed on Medicaid plans are waived in order to "enable States to try new or different approaches to the efficient and cost-effective delivery of health care services, or to adapt their programs to the special needs of particular areas or groups of recipients." 42 C.F.R. § 430.25; see also 42 U.S.C. § 1315; Cookeville Reg'l Med. Ctr. v. Leavitt, 531 F.3d 844, 845 (D.C. Cir. 2008), cert. denied, 129 S. Ct. 1524 (2009). Patients who participate in Section 1115 waiver programs who would not otherwise have been eligible for Medicaid are known as the "expansion population." The costs of providing care to this expansion population are treated as federally reimbursable expenditures "to the extent and for the period prescribed by the Secretary." 42 U.S.C. § 1315(a)(2)(A). Until January 2000, the Secretary excluded the expansion population's inpatient days from its DSH calculation. See Cookeville Reg'l Med. Ctr. v. Leavitt, 531 F.3d at 846.

In December 1999, the Secretary issued a program memorandum which reiterated the previous policy, but allowed intermediaries to include the expansion population in the DSH calculation for certain hospitals. See Program Memorandum Intermediaries, Trans. No. A-99-62 (Dec. 1999) ("PM A-99-62"). On January 20, 2000, the Secretary issued an interim final rule to

revise the policy and allow the inclusion of expansion population inpatient days in the DSH calculation. See Medicaid Inpatient Disproportionate Share Hospital (DSH) Adjustment Calculation, 65 Fed. Reg. 3136 (Jan. 20, 2000) ("Expansion Population Rule"). This rule by its terms was given prospective effect only. See id. at 3136. After litigation and additional congressional action, the court of appeals found that because the Secretary always had the discretion to exclude the expansion population from the DSH adjustment, it was permissible for the Secretary to decide that the change in policy issued January 20, 2000 apply only prospectively. See Cookeville Reg'l Med. Ctr. v. Leavitt, 531 F.3d at 846-49.

On September 27, 1997, the plaintiff hospital's fiscal intermediary issued an NPR for the cost reporting period ending in 1995. See Am. Compl. ¶ 25. This NPR did not include the expansion population in the eligible days determination for plaintiff's DSH adjustment. See id. Based on the Expansion Population Rule issued on January 20, 2000, plaintiff seeks an order of mandamus to require the fiscal intermediary to reopen plaintiff hospital's 1995 cost report pursuant to 42 C.F.R. § 405.1885(b) and to add the expansion population to the calculation of the DSH adjustment.[5]

The Secretary now moves to dismiss on the grounds that the statute of limitations has passed, that the decision in Cookeville is dispositive on plaintiff's claims, and that plaintiff has not met the requirements for mandamus jurisdiction. As explained below, the Court

---

[5] These are the facts relevant to plaintiff's First Amended Complaint. Plaintiff's original complaint, filed on February 26, 2003, asserted a claim relating to a different NPR and a different basis for revising the NPR. It was consolidated with In re Medicare Reimbursement Litigation, Misc. No. 03-0090 (D.D.C.). After virtually all of the consolidated cases settled, plaintiff amended its complaint to assert an entirely different claim and to characterize it as a putative class action.

concludes that the decision in Cookeville makes clear that plaintiff cannot meet the requirements for mandamus jurisdiction. The Court therefore need not reach the question of whether plaintiff's claim also fails because the statute of limitations has run.

## II. DISCUSSION

### A. Standard for Relief in the Nature of Mandamus

Plaintiff has moved for relief in the nature of mandamus pursuant to Section 1361 of Title 28. Section 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The remedy of mandamus "is a drastic one, to be invoked only in extraordinary circumstances." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980). Mandamus is available only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." In re Medicare Reimbursement Litig., 414 F.3d at 10 (quoting Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002)). The party seeking mandamus "has the burden of showing that 'its right to issuance of the writ is clear and indisputable.'" Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d 754, 758 (D.C. Cir. 1997) (quoting Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988)).[6]

---

[6] A plaintiff who makes a showing of these three legal elements still will only be awarded relief in mandamus if it is equitable to provide relief. See In re Medicare Reimbursement Litig., 414 F.3d at 10 (citing 13th Regional Corp. v. U.S. Dep't of Interior, 654 F.2d 758, 760 (D.C. Cir. 1980) (relief may be provided only when there exist "compelling . . . equitable grounds")).

### B. Following <u>Cookeville</u>, Plaintiff has No Clear Right to Relief

The Secretary argues that the court of appeals' decision in <u>Cookeville Regional Medical Center v. Leavitt</u> controls the outcome of this case. She makes this argument in part based on the parties' earlier agreement to stay the case pending the final decision by the court of appeals in <u>Cookeville</u>. <u>See</u> Joint Motion to Stay Proceedings, Dkt. No. 17. Now that the court of appeals has issued a decision in <u>Cookeville</u> in favor of the Secretary, the plaintiff asserts that "[t]his case is entirely different" from <u>Cookeville</u>. Opp. at 38. Although plaintiff attempts to distinguish its claims from those at issue in <u>Cookeville</u>, upon careful review of the matter, the Court has determined that the decision in <u>Cookeville</u> is controlling and establishes that defendant owes no duty to plaintiff enforceable in mandamus.

The facts at issue in <u>Cookeville</u> are very similar, albeit not identical, to those at issue in the case before the Court. The plaintiff hospitals in <u>Cookeville</u> based their claim on cost reports they had submitted before the Secretary issued the Expansion Population Rule in January 2000. <u>See</u> <u>Cookeville Reg'l Med. Ctr. v. Leavitt</u>, 531 F.3d at 846. The hospitals' NPRs for those cost reports did not take into account the expansion population for the purposes of calculating the DSH adjustment. <u>See id</u>. Unlike the plaintiff hospital in the current case, the hospitals in <u>Cookeville</u> appealed the determination to the PRRB and lost. The hospitals then exercised their right to file suit pursuant to 42 U.S.C. § 1395oo(f), alleging that the Secretary's exclusion of the expansion population from the DSH adjustment violated the statutory framework. <u>See id</u>. at 846-47.

In <u>Cookeville</u>, Judge Robertson found that the relevant statutes required the Secretary to include the expansion waiver population in the DSH adjustment. <u>See</u> <u>Cookeville</u>

7

Reg. Med. Ctr. v. Thompson, Civil Action No. 04-1053, 2005 WL 3276219 at *8 (D.D.C. Oct. 28, 2005). While the case was pending on appeal, Congress passed the Deficit Reduction Act of 2005, which included a provision explicitly giving the Secretary discretion to determine whether to include a demonstration project's expansion waiver population in the DSH adjustment. See Deficit Reduction Act of 2005 § 5002(a), Pub. L. 109-171 (2006) ("DRA"); see also Cookeville Reg'l Med. Ctr. v. Leavitt, 531 F.3d at 847. The Act also purported to ratify the Secretary's prior policies regarding the inclusion or exclusion of the expansion waiver population. See DRA § 5002(b). Following this congressional action, the court of appeals remanded the case then on appeal in Cookeville to the district court. See Cookeville Reg'l Med. Ctr. v. Leavitt, 531 F.3d at 847.

In light of the DRA, Judge Robertson on remand agreed with the Secretary that the prior judgment should be altered. Cookeville Reg'l Med. Ctr. V. Leavitt, Civil Action No. 04-1053, 2006 WL 2787831 at *8 (D.D.C. Sept. 26, 2006). He concluded that the DRA constituted a valid retroactive change in the law and granted summary judgment in favor of the Secretary. See id. at *7. The plaintiffs appealed that decision and, upon review, the court of appeals held that

> it was unclear, prior to the Deficit Reduction Act, whether the Secretary had discretion to exclude the expansion waiver population from the disproportionate share hospital adjustment. It follows that there is no problem of retroactivity. The Deficit Reduction Act did not retroactively alter settled law; it simply clarified an ambiguity in the existing legislation. . . . In doing so, Congress ratified the Secretary's earlier policies . . . [and] emphasize[d] that the Secretary always had this discretionary authority.

Cookeville Reg'l Med. Ctr. v. Leavitt, 531 F.3d at 849.

8

The plaintiff in this case argues that Cookeville is not controlling because in that case the plaintiffs appealed their NPR on the ground that even before the Secretary issued the Expansion Population Rule, the statutory framework required inclusion of the expansion population in the DSH adjustment calculation. See Opp. at 37. In contrast, in this case, the issue is *not* whether the pre-2000 statutory framework required inclusion of the expansion population in the DSH adjustment, but rather whether PM A-99-62 or the Expansion Population Rule "constituted a notice of inconsistency with applicable law, regulations or the Secretary's instructions, such that the reopening obligation found in 42 C.F.R. § 405.1885(b) was triggered." Opp. at 38.

To find in plaintiff's favor, the Court would have to conclude that the pre-2000 policy of excluding the expansion population from the DSH adjustment was *inconsistent with then applicable law* and that either PM A-99-62 or the Expansion Population Rule constituted a notice of this inconsistency, not simply a change in policy. The court of appeals' decision in Cookeville established that the Secretary's pre-2000 policy of excluding the expansion population from the DSH adjustment was *consistent* with the existing statutory framework. The court explained that prior to the DRA it was unclear whether the Secretary had the discretion to exclude the expansion population from the DSH adjustment. Cookeville Reg'l Med. Ctr. v. Leavitt, 531 F.3d at 849. During the time period for which plaintiff seeks reimbursement of its claims, the law did not plainly require the Secretary either to include or to exclude the expansion population from the DSH adjustment. Accordingly, the policy of excluding the expansion population from the DSH adjustment could not have been inconsistent with then applicable law. As such, neither PM A-99-62 nor the Expansion Population Rule could have been a notice that

the pre-2000 policy was inconsistent with applicable law such that it would require reopening pursuant to 42 C.F.R. § 405.1885(b).[7]

Even if the pre-2000 policy had been unlawful — which it was not — neither PM A-99-62 nor the Expansion Population Rule provides notice of this supposed unlawfulness.[8] PM A-99-62 affirmatively reiterated and clarified the prior policy and included "hold harmless" provisions so as not to punish hospitals that had misunderstood the policy. See PM A-99-62 at 1-3. In Cookeville, the court of appeals characterized PM A-99-62 as follows:

> Before January 2000, the Secretary's policy was not to include expansion waiver patients in the Medicaid fraction. Dep't of Health & Human Servs., Program Memorandum Intermediaries, Trans. No. A-99-62 (Dec.1999). Despite this policy, some financial intermediaries included the expansion waiver population

---

[7] Plaintiff argues that the Secretary's failure to undertake notice and comment procedures prior to issuing the Expansion Population Rule demonstrates that pre-2000 policy was invalid because under the court of appeals' decision in Monmouth, a new policy "would be unlawful absent notice and comment rulemaking, *unless the original interpretation itself was invalid.*" Opp. at 25 (citing Monmouth Med. Ctr. v. Thompson, 257 F. 3d 807, 814 (D.C. Cir. 2001)) (emphasis added). This argument is without merit. The court in Cookeville conclusively found that the pre-2000 policy was valid. The possibility that the new policy may have been issued in a procedurally improper way does not make the original policy invalid. As Judge Collyer explained in Ball Memorial Hospital v. Leavitt, when a new interpretation is issued without proper procedure, that interpretation is itself unlawful, and therefore cannot trigger the Secretary's duty to direct reopening pursuant to Section 405.1885(b). Ball Mem. Hosp. v. Leavitt, Civil Action No. 04-2254, 2006 WL 2714920 at *11 (D.D.C. 2006). Accordingly, regardless of whether notice and comment rulemaking was required, no duty to reopen plaintiff's NPR exists.

[8] As the Secretary points out, plaintiff's theory in support of this argument must be that Section 405.1885(b) requires reopening when the Secretary issues a document that could be characterized as a notice of inconsistency, even though no inconsistency actually exists. See Rep. at 11-12. This theory runs counter to the purpose of Section 405.1885(b), which provides a means to correct determinations that actually are inconsistent with applicable law; it should not be construed as a mechanism for hospitals to play "gotcha" with the Secretary. Nor does any support exist in the case law for requiring reopening based upon a purported notice of inconsistency when no inconsistency actually existed.

>    in the disproportionate share hospital adjustment. Id. The
>    Secretary recognized this as a violation of the stated policy but did
>    not attempt to recover the payments. Id.

Cookeville Reg'l Med. Ctr. v. Leavitt, 531 F.3d at 846.[9]

Program Memorandum A-99-62 was not a notice of inconsistency that would require reopening pursuant to Section 405.1885(b). Neither was the Expansion Population Rule, which reaffirmed the prior policy of excluding expansion population days, but stated that "we are revising the policy" effective with discharges occurring on or after January 20, 2000 to "allow" hospitals to include expansion population days in the DSH adjustment. 65 Fed. Reg. at 3136-37. As the Secretary points out, the Rule relies on statutory language giving the Secretary discretion in this area. See Mot., Memorandum in Support at 14 (citing 65 Fed. Reg. at 3137); see also Cookeville Reg'l Med. Ctr. v. Leavitt, 531 F.3d at 848-49 ("the Secretary acted as though the statute granted discretion to decide how to treat the expansion waiver population.").

For these reasons, the court of appeals' decision in Cookeville requires the Court to conclude that the Secretary has no duty enforceable in mandamus to reopen plaintiff's NPR.

---

[9] Plaintiff makes much of the fact that PM A-99-62 instructs intermediaries to include expansion population days for hospitals that had filed a jurisdictionally proper appeal and argues that such an instruction indicates that the Secretary understood the policy of excluding expansion population days to be unlawful such that the PRRB would require the expansion population days to be included on appeal. See Opp. at 24. Plaintiff reads too much into this provision. Read in its entirety, PM A-99-62 makes clear that the Secretary did not believe the policy was unlawful. See Cookeville Reg'l Med. Ctr. v. Leavitt, 531 F.3d at 846. A more reasonable interpretation of the provision is that the Secretary believed she had discretion under the Medicare statutory framework to include or to exclude expansion days from the DSH adjustment, which, in fact, she did. See id. at 849.

*C. Remaining Matters*

Plaintiff's motion to file a second amended complaint also is pending before the Court. Defendant has opposed the motion. The Court will "freely give leave [to amend] when justice so requires," FED. R. CIV. P. 15(a)(2), and "[i]t is common ground that Rule 15 embodies a generally favorable policy toward amendments." Howard v. Gutierrez, 237 F.R.D. 310, 312 (D.D.C. 2006) (quoting Davis v. Liberty Mutual Insurance Co., 871 F.2d 1134, 1136-37 (D.C. Cir. 1989)). Where amendment would be futile, however, the Court may in its discretion deny such a motion. See Vreven v. AARP, 604 F. Supp. 2d 9, 13 (D.D.C. 2009) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Plaintiff's proposed second amended complaint adds allegations regarding PM A-99-62. See Mot. to Amend, Memorandum in Support at 2-3. The Court considered the arguments plaintiff made regarding PM A-99-62 in its opposition to the Secretary's motion to dismiss and found them to be without merit. The proposed amendment would be futile, and plaintiff's motion will be denied.

Plaintiff filed a motion to strike portions of defendant's motion to dismiss. Plaintiff seeks to strike Section V of the motion to dismiss which is entitled "Mandamus Relief Should be Denied on Equitable Grounds." See Mot. to Strike at 1. The Court did not reach this issue in deciding defendant's motion to dismiss, and therefore need not resolve the motion to strike. It will be denied as moot.

## III. CONCLUSION

For the reasons stated above, the Court will deny the plaintiff's motion to amend, deny plaintiff's motion to strike, and will grant defendant's motion to dismiss. An Order consistent with this Opinion will issue this same day.

_/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: March 16, 2010